UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

JANE DOE,

Plaintiff,

v.

AMATEUR ATHLETIC UNION OF THE UNITED
STATES, INC.; DANE COUNTY DEPARTMENT OF
HUMAN SERVICES; STEPHEN BLUE; MADISON
METROPOLITAN SCHOOL DISTRICT; and JOHN
ROES 1-50,

Defendant.

**COMPLAINT**

**Civil Action No.: 19-901**

**[Trial by Jury Demanded]**

---

## I.   JURISDICTION

1.      This court has federal question subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 and 20 U.S.C. §1681(a).

2.      This Court has venue of this action under 28 U.S.C. §1391 as the Plaintiff resided in this District at all material times, and a substantial part of the events and omissions giving rise to the claim occurred in this District.

## II.   PARTIES

3.      Jane Doe, is a resident of New York. This action is brought anonymously as this case involves matters of the utmost intimacy, namely childhood sexual abuse. Plaintiff fears further psychological harm should her identity be revealed to the public.

4.      Defendant Dane County Department of Human Services is a political subdivision, agency, or part of the government of Dane County, Wisconsin.

5.      Defendant Stephen Blue, is an individual who at all material times was the director of the Dane County Department of Human Services' Neighborhood Intervention Program and the Madison Spartans Youth Basketball team.

6.      Defendant, Madison Metropolitan School District (the "School District") is a political subdivision, agency, or part of the government of Dane County, Wisconsin. The School District receives federal financial funding. The School District controls, operates, supervises, and maintains all public schools in Madison County, Wisconsin including Cherokee Middle School ("Cherokee").   JANE DOE was a student at Whitehorse at all relevant times.

7.      Defendant John Roe 1-50, are an individuals whose identities is currently unknown to Plaintiff who was responsible for the hiring and supervision of Shelton Kingcade at Madison Metropolitan School District and/or the Dane County Department of Human Services.

8.      Defendant Amateur Athletic Union of the United States, Inc. (hereinafter the "AAU") is a New York non-profit corporation with its principal place of business in Florida.

### III.     FACTUAL ALLEGATIONS

9.      Jane Doe is an adult woman who is currently 34 years old.

10.     Shelton Kingcade, is an adult male who at all material times was Jane Doe's basketball coach for the Madison Spartans Youth Basketball team as well as her coach for the Cherokee Middle School basketball team.

11.     In 1990, prior to meeting Jane Doe, Kingcade was arrested and charged in Wisconsin with Second Degree Sexual Assault of a Minor.

12.     In 1992, Kingcade was arrested again for Second Degree sexual assault of a child, but was not convicted for this offense.

13.     In approximately 1997, when Jane Doe was approximately 13 years old, she was a member of the Madison Spartans Youth Basketball ("Madison Spartans") team, which was at all material times coached by Shelton Kingcade.

14.     The Madison Spartans are a youth organization created, operated and controlled by the Dane County Department of Human Services ("Dane County DHS"). The Madison Spartans were a part of Dane County DHS's "Neighborhood Intervention Program." The Dane County DHS states that "the objective for the development of the basketball program was to give at risk, low-income youth exposure and opportunities to organized tournament basketball play. The program hopes to teach life choice skills, honor, and integrity through the use of basketball. In keeping with this philosophy, Spartan coaches keep in mind that they are teachers and role models first, basketball coaches second."

15.     Upon information and belief, Kingcade was hired by the Dane County DHS to serve as a coach for Plaintiff's Madison Spartans team.

16.     At all material times, Defendant Stephen Blue was the director of the Dane County DHS Neighborhood Intervention Program and was Kingcade's supervisor for the Dane County DHS. At all material times, Blue was aware that Kingcade was convicted of Second Degree Sexual Assault of a Minor.

17.     Jane Doe was sexually abused by Kingcade during his period of employment with the Dane County DHS, while Jane Doe was a member of the Madison Spartans basketball team.

18.      Additionally, Kingcade was employed by Madison Metropolitan School District. Kingcade was employed as the basketball coach for the Cherokee Middle School girls basketball team. Plaintiff Jane Doe was a member of this team while she attended Cherokee Middle and Kingcade was her coach.

19.     At all material times, the Madison Metropolitan School District knew, or reasonably should have known, that Kingcade was previously arrested and convicted of sexually abusing a minor.

20.     Jane Doe was sexually abused by Kingcade during his period of employment with the Madison Metropolitan School District, while Jane Doe was a student at Cherokee Middle.

21.     Jane Doe was sexually abused on multiple occasions by Shelton Kingcade. The acts of abuse occurred from when Jane Doe was approximately 13 – 16 years old. The acts of sexual abuse included vaginal intercourse, oral sex and anal sex. The acts of abuse occurred in Kingcade's home and in hotels rented by Kingcade.

22.     Additionally, Jane Doe traveled with Kingcade and the Madison Spartans basketball team to multiple basketball tournaments in Wisconsin and Minnesota sanctioned and organized by Defendant Amateur Athletic Union. While attending these tournaments, Kingcade sexually assaulted on Jane Doe multiple occasions in a hotel room.

23.     As a result of the sexual assaults, Jane Doe has suffered and will continue to suffer severe psychological and emotional injuries.

### COUNT I
### VIOLATION OF 42 U.S.C. 1983 - POLICY, PRACTICE OR CUSTOM CAUSING CONSTITUTIONAL HARM
### (AGAINST DEFENDANT DANE COUNTY DEPARTMENT OF HUMAN SERVICES)

24.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through ___ above.

25.     Jane Doe had a constitutional right not to be sexually abused while in the care of Defendant Dane County DHS. Specifically, Jane had a constitutional due process liberty interest to bodily integrity.

26.     Dane County DHS had an affirmative constitutional duty to protect Jane's right to bodily integrity, including protection from sexual abuse by one its employees or agents.

27.     Dane County DHS was at all relevant times a final policymaker, with authority to make a decision and/or adopt a course of action in the hiring of Kingcade despite his prior conviction of sexually assaulting a minor.

28.     Upon information and belief, at all relevant Dane County DHS had a longstanding policy, practice or custom of lax investigation and non-response to information that an employee or agent has a dangerous sexual propensity toward children.  Defendant Dane County DHS further had a custom or policy of hiring employees such as Kingcade despite knowing they had been previously convicted of crimes, including sexually abusing children.

29.     Upon information and belief, Dane County DHS employees and directors were aware, or in the exercise of reasonable care, should have been aware, that Kingcade was sexually abusing children in its programs.

30.     Dane County DHS acted with deliberate indifference in the hiring of Kingcade and granting him unsupervised, unfettered access to children despite his previous conviction for sexually assaulting a minor.

31.     Dane County DHS's policy, practice or custom is also reflected in its gross failure to take any remedial action in response to its knowledge of his prior sexual assault conviction including: (i) failing to remove Kingcade from authority and control of children; and (ii) failing to impose any restrictions whatsoever on Kingcade's access to children.

32.     Dane County DHS violated Jane's constitutional right to bodily integrity.

33.     The policy or custom of Dane County DHS was the moving force of the violation of Jane's constitutional rights.

34.     As a result of the Dane County DHS's policy, practice or custom, Jane Doe was sexually assaulted by Kingcade, which has caused her to suffer damages.

WHEREFORE, Plaintiff, Jane Doe, demands compensatory damages, attorneys' fees, punitive damages, and fees and costs against Defendant, Dane County Department of Human Services pursuant to 42 U.S.C. §1988, and such other and further relief as this Court deems just and proper.

## COUNT II
## (VIOLATION OF 42 U.S.C. §1983 - DEFICIENT TRAINING PRACTICES CAUSING CONSTITUTIONAL HARM
## (AGAINST DANE COUNTY DEPARTMENT OF HUMAN SERVICES)

35.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 12 above.

36.     Dane County DHS failed to adequately investigate its employees prior to hiring them and failed to adequately supervise its employees. Kingcade was hired by Dane County DHS despite his prior conviction of sexually assaulting a minor. Furthermore, Kingcade was allowed to drive minor females home alone and was allowed to be alone with them in hotel rooms during tournaments the Madison Spartans attended. Dane County DHS's supervision and training practices were not calculated or designed to protect children from sexual abuse.

37.     Failure to adequately train and supervise with regard to the risks of sexual assault upon students was an official policy of Dane County DHS.

38.     Dane County DHS was deliberately indifferent to the constitutional rights of children to bodily integrity in adopting its supervision and training practices.

39.     Dane County DHS's failure to train or supervise reflects a deliberate or conscious choice.

40.     The foregoing deficiency in Dane County DHS's training and supervision practices caused Jane Doe to be sexually assaulted by Kingcade and suffer damages.

WHEREFORE, Plaintiff demands judgment for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. §1988, and such other and further relief as this Court deems just and proper.

**COUNT III**
**NEGLIGENCE**
**(AGAINST DANE COUNTY DEPARTMENT OF HUMAN SERVICES)**

41.     Plaintiff, Jane Doe, repeats and re-alleges the allegations in paragraphs 1 through 33 above.

42.     Jane Doe and Defendant had a special relationship based on Jane Doe's status as a child enrolled in Defendant's athletic program.

43.     Dane County DHS and Kingcade were in a special relationship as employer and employee/agent.

44.     Defendant purports to offer their children a secure educational environment, overseen by safe, quality adults whose duties include assisting and mentoring children through critical years of adolescent development.

45.     Upon information and belief, Defendant knew or should have known that Kingcade was convicted of sexually abusing a minor in 1990. Despite this knowledge, Defendant hired and retained Kingcade and placed him in a position where he was able to sexually abuse children.

46.     Furthermore, Defendant knew or should have known that Kingcade was engaging in inappropriate behavior with minor females on his teams, including sleeping in hotel rooms with players and driving players home alone.

47.     Upon information and belief, it was foreseeable to Defendant that Kingcade would develop a sexual interest in Jane Doe and sexually abuse her.

48.     Defendant had a duty to protect children who were enrolled in its programs from the actions and conduct of Kingcade, who, upon information and belief, it knew or should have known had dangerous sexual propensities.

49.     Defendant owed a duty to Jane Doe to protect her from the criminal misconduct of Kingcade.

50.     By virtue of the parties' special relationship, Defendant had a duty to assure that the adults whom it gave access to Jane Doe and placed in contact with Jane Doe were safe.

51.     Defendant owed a duty to Jane Doe and her parents to warn them that Jane Doe was in danger from Kingcade as a result of her enrollment in the Defendant's program.

52.     At all relevant times, Defendant had inadequate policies and procedures to protect children it was entrusted to care for and protect, including Jane Doe.

53.     Defendant breached its duties to JANE DOE by:

     (i)     Failing to properly screen prospective employees to insure that they were trained and suitable to interact with and supervise children;

     (ii)    Failing to exercise reasonable care in the supervision of Jane Doe and other children for whom Defendant was responsible and under the direct guidance and supervision of Defendant;

     (iii)   Placing Jane Doe and other children in a position where such harm and danger could be inflicted upon them;

     (iv)    Failing to exercise reasonable care in the supervision of Kingcade;

(v)     Failing to properly investigate the inappropriate relationship between Kingcade and Jane Doe and taking appropriate actions to intervene and ensure such conduct did not occur again;

(vi)    Failing to have a policy or program of training and prevention to prohibit such incidents and to ensure compliance with all applicable regulations, statutes, codes, industry standards and other guidelines and specifications; and

(vii)   Failing to warn Jane Doe and her parents that Jane Doe was in danger from Defendant's agent and/or employee, Kingcade.

54.     Jane Doe was within the zone of foreseeable risk caused by Defendant's breach of its duties.

55.     As a result of Kingcade's acts and conduct, Jane Doe has suffered severe and permanent physical and psychological injuries, shame, humiliation and inability to lead a normal life.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, Dane County Department of Human Services, for damages, costs and any additional relief to which they may be entitled.


## COUNT IV
## VIOLATION OF 42 U.S.C. §1983
## (AGAINST DEFENDANT STEPHEN BLUE)

56.     Plaintiff, Jane Doe, repeats and re-alleges the allegations in paragraphs 1 through 33 above.

57.     This claim is brought against Defendant Blue in his individual capacity.

58.     At all relevant times, Blue acted under color of state law, including without limitation, as Director of the Dane County DHS's Neighborhood Intervention Program and the Madison Spartans Youth Basketball team .

59.     At all relevant times, Blue was in a supervisory position to Kingcade.

60.     At time of Kingcade's hiring, Blue was aware that Kingcade was previously convicted of sexually assaulting a minor.

61.     Furthermore, upon information and belief, Blue was aware that Kingcade was engaging in inappropriate behavior with minor females including, but not limited to, spending time in hotels alone with individual players and driving female players home alone.

62.     At all relevant times, Jane Doe had a clearly established constitutional right to bodily integrity and to be free from sexual abuse and harassment.

63.     At all relevant times when Jane Doe was being sexually harassed by Kingcade, Blue knew or should have known of an unreasonable risk of constitutional injury to minor females on his teams.

64.     While in a supervisory position to Kingcade, Blue knew or should have known that Kingcade was engaged in conduct that posed a pervasive and unreasonable risk to the bodily integrity of minor females on his teams, including Jane Doe, and their right to be free from sexual abuse and harassment in programs operated by Dane County DHS.

65.     Blue's response to actual or constructive knowledge that Kingcade had engaged in conduct that posed a pervasive and unreasonable risk to the bodily integrity of female students and their right to be free from sexual abuse was so inadequate as to show deliberate indifference.

66.     In response to actual or constructive notice of Kingcade's acts and conduct of an intimate and physical nature, Blue responded in a manner that he could not have expected would correct or remedy Kingcade's misconduct.

67.     Upon information and belief, there were numerous other steps that Blue could have taken to prevent constitutional injury, which he did not take, including: (i) not hiring Kingcade; (ii) reassigning Kingcade permanently to a position that would not involve contact or supervisory control of minor females; (iii) assigning adult staff to supervise and monitor Kingcade in his interactions with minor females; (iv) using surveillance equipment to monitor Kingcade's interactions with minor females; (v) notifying and warning parents and players of Kingcade's past acts or the dangers that he posed; or (vi) such other measures reasonably designed to prevent intimate or physical contact between Kingcade and minor females on his basketball team.

68.     Upon information and belief, Blue never warned or informed staff members and to watch or monitor Kingcade closely to assure that he was not engaging in the same or similar physical sexual misconduct with minor females.

69.     Upon information and belief, Blue had no means of knowing or discovering whether Kingcade was continuing to engage in intimate or physical conduct with, or sexual harassment of, minor females.

70.     A minimally adequate and proper response from Blue would have prevented Kingcade's sexual harassment and abuse of Jane Doe.

71.     83.     As a result of Blue's inaction and deliberate indifference, Jane Doe was sexually harassed and molested by Kingcade, including during events sponsored by the Dane County DHS, causing her to suffer severe and permanent injuries.

WHEREFORE, Plaintiff demands judgment against Defendant Stephen Blue for compensatory and special damages, costs, attorneys' fees pursuant to 42 U.S.C. §1988, and such other relief this Court deems just and proper.

### COUNT V
### VIOLATION OF 42 U.S.C. 1983 - POLICY, PRACTICE OR CUSTOM CAUSING CONSTITUTIONAL HARM
### (AGAINST DEFENDANT MADISON METROPOLITAN SCHOOL DISTRICT)

72.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through __ above.

73.     Jane Doe had a constitutional right not to be sexually abused while in the care of Defendant Madison Metropolitan School District (the "School District". Specifically, Jane had a constitutional due process liberty interest to bodily integrity.

74.     The School District had an affirmative constitutional duty to protect Jane's right to bodily integrity, including protection from sexual abuse by one its employees or agents.

75.     The School District was at all relevant times a final policymaker, with authority to make a decision and/or adopt a course of action in the hiring of Kingcade despite his prior conviction of sexually assaulting a minor.

76.     Upon information and belief, at all relevant times The School District had a longstanding policy, practice or custom of lax investigation and non-response to information that an employee or agent has a dangerous sexual propensity toward children. The School District further had a custom or policy of hiring employees such as Kingcade despite knowing they had been previously convicted of crimes, including sexually abusing children.

77.     Upon information and belief, The School District's employees and administrators were aware, or in the exercise of reasonable care, should have been aware, that Kingcade was

sexually abusing students, including Jane Doe.

78.     The School District acted with deliberate indifference in the hiring of Kingcade and granting him unsupervised, unfettered access to students despite his previous conviction for sexually assaulting a minor.

79.     The School District's policy, practice or custom is also reflected in its gross failure to take any remedial action in response to its knowledge of his prior sexual assault conviction including: (i) failing to remove Kingcade from authority and control of students; and (ii) failing to impose any restrictions whatsoever on Kingcade's access to students.

80.     The School District violated Jane's constitutional right to bodily integrity.

81.     The policy or custom of the School District was the moving force of the violation of Jane's constitutional rights.

82.     As a result of the School District's policy, practice or custom, Jane Doe was sexually assaulted by Kingcade, which has caused her to suffer damages.

WHEREFORE, Plaintiff, Jane Doe, demands compensatory damages, attorneys' fees, punitive damages, and fees and costs against Defendant, Madison Metropolitan School District pursuant to 42 U.S.C. §1988, and such other and further relief as this Court deems just and proper.

### COUNT VI
### (VIOLATION OF 42 U.S.C. §1983 - DEFICIENT TRAINING PRACTICES CAUSING CONSTITUTIONAL HARM
### (AGAINST MADISON METROPOLITAN SCHOOL DISTRICT)

83.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 12 above.

84.     The School District failed to adequately investigate its employees prior to hiring them and failed to adequately supervise its employees. Kingcade was hired by The School District

despite his prior conviction of sexually assaulting a minor. Furthermore, upon information and belief, the School District was aware or should have been aware that Kingcade was engaging in sexually inappropriate behavior with students. The School District's supervision and training practices were not calculated or designed to protect children from sexual abuse.

85.     Failure to adequately train and supervise with regard to the risks of sexual assault upon students was an official policy of the School District.

86.     The School District was deliberately indifferent to the constitutional rights of students to bodily integrity in adopting its supervision and training practices.

87.     The School District's failure to train or supervise reflects a deliberate or conscious choice.

88.     The foregoing deficiency in the School District's training and supervision practices caused Jane Doe to be sexually assaulted by Kingcade and suffer damages.

WHEREFORE, Plaintiff demands judgment for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. §1988, and such other and further relief as this Court deems just and proper.

**COUNT VII**
**NEGLIGENCE**
**(AGAINST DANE COUNTY DEPARTMENT OF HUMAN SERVICES)**

89.     Plaintiff, Jane Doe, repeats and re-alleges the allegations in paragraphs 1 through 33 above.

90.     Jane Doe and Defendant had a special relationship based on Jane Doe's status as a student enrolled in Defendant's school.

91.     Defendant and Kingcade were in a special relationship as employer and employee/agent.

92.     Defendant purports to offer their children a secure educational environment, overseen by safe, quality adults whose duties include assisting and mentoring children through critical years of adolescent development.

93.     Upon information and belief, Defendant knew or should have known that Kingcade was convicted of sexually abusing a minor in 1990. Despite this knowledge, Defendant hired and retained Kingcade and placed him in a position where he was able to sexually abuse children.

94.     Furthermore, Defendant knew or should have known that Kingcade was engaging in inappropriate behavior with students.

95.     Upon information and belief, it was foreseeable to Defendant that Kingcade would develop a sexual interest in Jane Doe and sexually abuse her.

96.     Defendant had a duty to protect children who were enrolled in its schools from the actions and conduct of Kingcade, who, upon information and belief, it knew or should have known had dangerous sexual propensities.

97.     Defendant owed a duty to Jane Doe to protect her from the criminal misconduct of Kingcade.

98.     By virtue of the parties' special relationship, Defendant had a duty to assure that the adults whom it gave access to Jane Doe and placed in contact with Jane Doe were safe.

99.     Defendant owed a duty to Jane Doe and her parents to warn them that Jane Doe was in danger from Kingcade as a result of her enrollment in the Defendant's schools.

100.    At all relevant times, Defendant had inadequate policies and procedures to protect children it was entrusted to care for and protect, including Jane Doe.

101.    Defendant breached its duties to Jane Doe by:

(i)    Failing to properly screen prospective employees to ensure that they were trained and suitable to interact with and supervise children;

(ii)   Failing to exercise reasonable care in the supervision of Jane Doe and other children for whom Defendant was responsible and under the direct guidance and supervision of Defendant;

(iii)  Placing Jane Doe and other children in a position where such harm and danger could be inflicted upon them;

(iv)   Failing to exercise reasonable care in the supervision of Kingcade;

(v)    Failing to properly investigate the inappropriate relationship between Kingcade and Jane Doe and taking appropriate actions to intervene and ensure such conduct did not occur again;

(vi)   Failing to have a policy or program of training and prevention to prohibit such incidents and to ensure compliance with all applicable regulations, statutes, codes, industry standards and other guidelines and specifications; and

(vii)  Failing to warn Jane Doe and her parents that Jane Doe was in danger from Defendant's agent and/or employee, Kingcade.

102.   Jane Doe was within the zone of foreseeable risk caused by Defendant's breach of its duties.

103.   As a result of Kingcade's acts and conduct, Jane Doe has suffered severe and permanent physical and psychological injuries, shame, humiliation and inability to lead a normal life.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, Madison Metropolitan School District, for damages, costs and any additional relief to which they may be entitled.

**COUNT VIII**
**VIOLATION OF 42 U.S.C. §1983**
**(AGAINST DEFENDANT JOHN ROE)**

104.    Plaintiff, Jane Doe, repeats and re-alleges the allegations in paragraphs 1 through 33 above.

105.    This claim is brought against Defendant John Roe in his individual capacity. John Roe is an individual employed by the Madison Metropolitan School District, whose identity is currently unknown to Plaintiff, who was responsible for the hiring and/or supervision of Shelton Kingcade.

106.    At all relevant times, Roe acted under color of state law, including without limitation, as Kingcade's supervisor at the School District.

107.    At time of Kingcade's hiring, Roe was aware that Kingcade was previously convicted of sexually assaulting a minor.

108.    Furthermore, upon information and belief, Roe was aware that Kingcade was engaging in inappropriate behavior with minor females.

109.    At all relevant times, Jane Doe had a clearly established constitutional right to bodily integrity and to be free from sexual abuse and harassment.

110.    At all relevant times when Jane Doe was being sexually harassed by Kingcade, Roe knew or should have known of an unreasonable risk of constitutional injury to minor females on his teams.

111.    While in a supervisory position to Kingcade, Roe knew or should have known that Kingcade was engaged in conduct that posed a pervasive and unreasonable risk to the bodily integrity of minor females on his teams, including Jane Doe, and their right to be free from sexual abuse and harassment in while attending school in the School District.

112.    Roe's response to actual or constructive knowledge that Kingcade had engaged in conduct that posed a pervasive and unreasonable risk to the bodily integrity of female students and their right to be free from sexual abuse was so inadequate as to show deliberate indifference.

113.    In response to actual or constructive notice of Kingcade's acts and conduct of an intimate and physical nature, Roe responded in a manner that he could not have expected would correct or remedy Kingcade's misconduct.

114.    Upon information and belief, there were numerous other steps that Roe could have taken to prevent constitutional injury, which he did not take, including: (i) not hiring Kingcade; (ii) reassigning Kingcade permanently to a position that would not involve contact or supervisory control of students; (iii) assigning adult staff to supervise and monitor Kingcade in his interactions with students; (iv) using surveillance equipment to monitor Kingcade's interactions with students; (v) notifying and warning parents and students of Kingcade's past acts or the dangers that he posed; or (vi) such other measures reasonably designed to prevent intimate or physical contact between Kingcade and students.

115.    Upon information and belief, Roe never warned or informed staff members to watch or monitor Kingcade closely to assure that he was not engaging in the same or similar physical sexual misconduct with minor females.

116.    Upon information and belief, Roe had no means of knowing or discovering whether Kingcade was continuing to engage in intimate or physical conduct with, or sexual harassment of, minor females.

117.    A minimally adequate and proper response from Roe would have prevented Kingcade's sexual harassment and abuse of Jane Doe.

118.    As a result of Roe's inaction and deliberate indifference, Jane Doe was sexually harassed and molested by Kingcade, causing her to suffer severe and permanent injuries.

WHEREFORE, Plaintiff demands judgment against Defendant John Roe for compensatory and special damages, costs, attorneys' fees pursuant to 42 U.S.C. §1988, and such other relief this Court deems just and proper.

## COUNT IX
## NEGLIGENCE
### (AGAINST DEFENDANT AMATEUR ATHLETIC UNION)

119.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through __ below.

120.    The AAU is a multi-sport organization dedicated to the promotion and development of amateur sports and physical fitness programs, whose participants are minors.

121.    The AAU sponsors and sanctions athletic events. The Madison Spartans and Jane Doe participated in multiple tournaments sponsored and sanctioned by the AAU.

122.    Jane Doe was sexually abused by Kingcade during the course of multiple AAU sanctioned tournaments in Wisconsin and Minnesota.

123.    The AAU is comprised of members. Membership in the AAU is a privilege and not a right. The AAU has sole discretion in determining whether to accept or reject a club or individual as a member.

124.    There are three categories of AAU members. A "District Member" is an organization chartered by the AAU Congress to provide administrative services within designated geographic area. A "Club Member" is an organization or group that has been approved for membership. An "Individual Member" is a person who has been approved for membership by the AAU. Individual Members are divided into Youth Athlete, Adult Athlete and Non-Athlete.

125.    Upon information and belief, Kingcade was at all material times an AAU member who had been approved for membership by the AAU.

126.    In order for a coach to participate in AAU tournaments, he must be a member of the AAU. Furthermore, athletes can only participate in AAU tournaments with coaches who are AAU members.

127.    The AAU had control over Kingcade's conduct through its policies and procedures, which prohibits sexual harassment and does not permit members credibly accused of sexual abuse. The AAU had the ability to ban Kingcade from membership and from participating in AAU events.

128.    In the AAU's written solicitations for membership, its handbook, and Code, the AAU states that its policy is "to deny participation in the AAU to any individual for whom there is reasonable cause to believe that they have engaged in sexual misconduct."

129.    In addition, the AAU code provides that "reasonable cause" for denial of participation exists when an individual has been accused of sexual misconduct and the accusations hve reasonable probative value.

130.    It is a violation of the AAU Code to engage in sexual misconduct.

131.    It is a violation of the AAU Code to permit those for whom there is a reasonable cause to believe they have engaged in sexual misconduct to remain members of AAU.

132.    The AAU Congress has the responsibility to impose and enforce penalties for violation of the AAU Code.

133.    At all relevant times, the AAU was aware or should have been aware that there was reasonable cause to believe Shelton Kingade engaged in sexual misconduct. Particularly, the AAU was aware or should have been aware, that Kingcade was convicted of Second Degree Sexual Assault of a Minor in 1990. Furthermore, the AAU was aware or should have been aware that Kingcade was spending time alone with his female players during AAU sanctioned tournaments.

134.    The AAU can enforce its policies and procedures by temporarily suspending Kingcade or by banning him from participation.

135.    By 1997, when the sexual abuse of Plaintiff began, sexual abuse of minors by figures of authorities, like priests, coaches and scout leaders was a widely known risk in American society. It was therefore foreseeable to AAU that youth athletes participating in its tournaments might be sexually molested by their coaches.

136.    The AAU was therefore in the best position to protect against the risk of harm and meaningfully reduce the risk of the harm that actually occurred, namely the sexual abuse of minor female AAU athletes.

137.    At all material times, Defendant AAU was in a special relationship with Plaintiff, who was a participant in the tournaments sanctioned and sponsored by the AAU.

138.    As a result of this special relationship, Defendant AAU had a duty of reasonable care to enforce and/or enact policies and procedures to protect female athletes, such as Plaintiff, from sexual assault and molestation by coaches and persons in authority.

139.    Additionally, Defendant AAU was in a special relationship with Kingcade such that it had a duty to control his conduct.

140.   Defendant AAU had the authority to control Kingcade's conduct directly and had the authority to prevent him from coaching in AAU tournaments.

141.   Defendant AAU breached its duty of care by failing to adopt and enforce policies and procedures to protect athletes from sexual abuse by coaches.

142.   Defendant AAU furthermore failed to conduct background screenings of its coaches to determine if they have been convicted of sexually abusing children. Had a background screening of Kingcade been conducted, he would not have been in a position to sexually abuse Jane Doe during the course of multiple AAU tournaments.

143.   Furthermore, Defendant AAU breached its duty of reasonable care in allowing Kingcade to spend time in a hotel alone with Plaintiff during AAU tournaments, despite its knowledge that this behavior posed a significant risk of sexual abuse.

144.   Defendant AAU knew or should have known Kingcade was violating its policies and procedures based on the behavior he displayed in public and at competitions.

145.   At all relevant times, Defendant AAU did not have policies prohibiting coaches from staying in hotel rooms with minor athletes, or in the alternative, did not enforce such policy.

146.   As a result of Defendant AAU's breaches, Jane Doe was sexually abuse by Kingcade during the course of multiple AAU tournaments.

147.   As a direct and proximate result of the AAU's negligence, Plaintiff has suffered severe psychological, emotional and physical injuries, and emotional distress.

WHEREFORE, Plaintiff JANE DOE respectfully requests that this Court enter judgment against the Defendant AAU and award all damages including compensatory damages and special damages and any other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action.

Dated: November 1, 2019

Respectfully submitted,

HERMAN LAW
1800 N. Military Trail
Suite 160
Boca Raton, FL 33486

By:        /s/ *Daniel G. Ellis*
        Jeffrey M. Herman (*pending admission*)
        jherman@hermanlaw.com
        Daniel G. Ellis (*pending admission*)
        dellis@hermanlaw.com